1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9
10

| | |
|---|---|
| RAUL ARELLANO, JR.,<br>CDCR #AH-1995,<br><br>       Plaintiff,<br><br>vs.<br><br><br>COUNTY OF SAN DIEGO, et al.,<br>       Defendants. | Case No.:  3:14-cv-2404-GPC-KSC<br><br>**ORDER: GRANTING DEFENDANT COUNTY OF SAN DIEGO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P. 56 [ECF No. 148];**<br><br>**GRANTING DEFENDANT CITY OF SAN DIEGO'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P. 56 [ECF No. 149];**<br><br>**DENYING PLAINTIFF'S MOTION TO RECONSIDER [ECF No. 180]; and**<br><br>**ISSUING ORDER TO SHOW CAUSE AND DISMISSING CERTAIN DEFENDANTS FROM THE ACTION.** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     INTRODUCTION

Plaintiff Raul Arellano Jr. ("Arellano" or "Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis,* filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 8, 2014. (*See* Compl. ECF No. 1.) The operative Second Amended Complaint ("SAC"), alleges violations of Arellano's constitutional rights by several defendants, including the City of San Diego and County of San Diego, arising out of Arellano's arrest in Tijuana, Mexico on November 7, 2010, pursuant to a warrant issued by the San Diego County Superior Court. (*See* SAC, ECF No. 62 at 7–9.)

Currently before the Court is are two Motions for Summary Judgment filed pursuant to Fed. R. Civ. P. 56, one filed by Defendant County of San Diego ("County") (ECF No. 148) and the other filed by Defendant City of San Diego ("City"). (ECF No. 149.) After he was notified of the requirements for opposing summary pursuant to *Rand v. Rowland*, 154 F.3d 952, 962–63 (9th Cir. 1998) (*see* Nots., ECF Nos. 150 and 151), Arellano filed an Opposition to Defendants' motions on November 4, 2019 (Pl.'s Opp'n, ECF No. 157). The County and City filed Replies on November 7, 2019. (*See* County Reply, ECF. No. 158; City Reply, ECF No. 159.) After receiving an extension of time, Arellano filed a Surreply on January 2, 2020. (Pl.'s Surreply, ECF No. 168.)

Additionally, before the Court is Plaintiff's Motion for Reconsideration of the Court's Order Denying Default Judgment against Defendants. (ECF No. 180.)

For the reasons discussed below, the Court **GRANTS** Defendants' Motions for Summary Judgment (ECF Nos. 148 and 149), **DIRECTS** the Clerk of the Court to enter judgment in favor of the County of San Diego and the City of San Diego, **DENIES** Plaintiff's Motion for Reconsideration, **DISMISSES** Defendants Guerrero Bail Bonds, Officer Guerrero, the San Diego Violent Crimes Task Force, and the U.S. Marshall's Office, and Plaintiff is **ORDERED TO SHOW CAUSE** as to why Jesus Guerrero, P. Beal, and the United States should not be dismissed from this case.

/ / /

/ / /

## II.     PROCEDURAL BACKGROUND

On October 8, 2014, Arellano filed a Complaint, alleging that law enforcement officials from the City of San Diego, Guerrero Bail Bonds, "Officer Guerrero," the "Fugitive Task Force" and other "arresting officers" violated his Constitutional rights when they apprehended him in Mexico pursuant to an arrest warrant issued in San Diego, California. (*See* Compl., ECF No. 1 at 2.) Specifically, Arellano alleged arresting officers used excessive force against him, in violation of his Fourth Amendment rights. (*See id.*) On November 3, 2014, the Court granted Plaintiff leave to proceed *in forma pauperis*, screened his Complaint pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, and directed U.S. Marshals to execute service of the Complaint on Arellano's behalf. (*See* Order, ECF No. 3.)

On March 2, 2016, Arellano filed a First Amended Complaint ("FAC"). (*See* ECF No. 27.) In it, he again alleged that his constitutional rights were violated when he was arrested in Tijuana, Mexico. In his FAC, Plaintiff named: (1) City of El Cajon; (2) City of San Diego; (3) County of San Diego; (4) Guerrero Bail Bonds; (5) Henry Guerrero, a bail bondsman with Guerrero Bail Bonds, (6) San Diego Regional Fugitive Task Force; (7) United States Deputy Marshal ("USDM"), Jesus Guerrero; (8) USDM, P. Beal; (9) the United States Marshal's Office and (10) the United States of America, as defendants. (FAC, ECF No. 27 at 2–3.) In his FAC, Arellano sought damages related to his arrest and pre-trial detention in Mexico, pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. (FAC at 7–8, 14.) Specifically, Arellano alleged violations of his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution. (*Id.* at 7.) In his FAC, he further sought to bring a *Bivens* action for money damages against U.S. Deputy Marshals, P. Beal and Jesus Guerrero. (*Id.* at 31.)

On March 16, 2016, the County filed a Motion to Dismiss Arellano's FAC for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*See* County Mot. to Dism., ECF No. 30.) On April 26, 2016, the City of El Cajon also filed a Motion to Dismiss Arellano's FAC for failure to

state a claim. (*See* El Cajon Mot. to Dism., ECF No. 42.) On April 27, 2016, the City of San Diego filed a Motion to Dismiss the FAC for failure to identify a cognizable legal theory or allege sufficient facts to support a cognizable legal theory, pursuant to Rule 8(a) of the Federal Rules of Civil Procedure. (City Mot. to Dism., ECF No. 43). On December 28, 2016, this Court dismissed Arellano's claims against the City of El Cajon's with prejudice. (Order, ECF No. 58 at 22.) As to the City of San Diego and the County of San Diego, the Court dismissed Plaintiff's claims without prejudice and with leave to amend. (*Id.*)

On January 26, 2017, Arellano filed a Second Amended Complaint ("SAC"), in which he named the same ten defendants as named in the FAC.[1] As to the City and County of San Diego (hereafter "Municipal Defendants"),[2] Arellano alleges Municipal Defendants are liable under 42 U.S.C. § 1983 because: (1) they issued or were responsible for the execution of the warrant that led to Arellano's arrest in Mexico; (*see* SAC at 23); (2) the officers who harmed him admitted they were part of the "agenc[ies] mention[ed] here, plus part of the Mexican police," (*id.* at 24); and (3) Municipal Defendants are responsible for the officers' actions because they had a policy authorizing agents to violate a person's constitutional rights while executing a warrant or, alternatively, that Municipal Defendants failed to train their agents to refrain from violating Plaintiff's rights. (*Id.* at 23–24.) Arellano also alleges in his SAC that Municipal Defendants violated his rights under 42 U.S.C. §§ 1985 and 1986. (*See also id.* at 13–14.)

Municipal Defendants filed motions to dismiss the SAC on February 17, 2017. (*See* City Mot. Dism. SAC, ECF No. 64; County Mot. to Dism. SAC, ECF No. 65.)  On

---

[1] Although the Court dismissed the City of El Cajon with prejudice, Plaintiff filed a motion for reconsideration of that dismissal. (*See* Pl.'s Mot. Recons., ECF No. 73). The Court denied the motion on August 18, 2017. (*See* Order Den. Mot. Recons., ECF No. 87.)

[2] For the remainder of this Order, "Municipal Defendants" refers collectively to Defendants City of San Diego and County of San Diego. To the extent the Court refers to Defendant City of El Cajon, it shall do so separately, as "City of El Cajon."

August 18, 2017, the Court granted the motions in part and denied them in part.[3] (Order, ECF No. 87.) Specifically, the Court dismissed Arellano's 42 U.S.C. §§ 1985(3) and 1986 claims as to the City and County of San Diego but denied their motions to dismiss Arellano's § 1983 claims. The Court, however, concluded that, "to the extent Plaintiff claims that Municipal Defendants are liable under § 1983 for the execution of the warrant that led to his arrest" he failed to state a claim. As such, the Court found Municipal Defendants "were not liable for the harm [Arellano] alleges to have resulted because of the issuance of a valid warrant." (*Id.* at 9, fn. 6.)

The City and County filed Answers to the SAC on August 8, 2017 and August 30, 2017, respectively. (*See* City Answer, ECF No. 89; County Answer, ECF No. 90.)[4] The case proceeded with Arellano and Municipal Defendants engaging in discovery. On September 19, 2019, both the City and County filed separate motions for summary judgment which are currently pending before the Court. (*See* County Mot. for Summ. J., ECF No. 148; City, Mot. for Summ. J., ECF No. 149.)

On August 27, 2019, Plaintiff filed a motion for default judgment against (1) Guerrero Bail Bonds; (2) Officer Guerrero; (3) San Diego Violent Crimes Task Force; (4) Jesus Guerrero; (5) P. Beal; (6) U.S. Marshall's Office. (ECF No. 145.) The Court denied this motion on February 28, 2020 due to Plaintiff's failure to first request that the clerk enter default. (ECF No. 175 at 2.) On June 5, 2020, Plaintiff filed a Motion to Reconsider which is currently pending before the Court. (ECF No. 180).

## III.   UNDISPUTED FACTS

On January 5, 2010, the San Diego County Superior Court in El Cajon issued a

---

[3] The Court also denied Arellano's Motion for Reconsideration of the Court's dismissal of the City of El Cajon as a defendant. (*See* Pl.'s Mot. for Recons., ECF No. 70; Order, ECF No. 87.)

[4] Arellano attempted to serve the remaining defendants, Guerrero Bail Bonds, Henry Guerrero, Fugitive Task Force, P. Beal, Jesus Guererro, the U.S. Marshals Office and the United States. (*See* USM-285 Executions of Service, ECF Nos. 10, 11, 12, 33–39.) None of the remaining defendants have Answered or responded to the SAC.

warrant for Arellano's arrest after he failed to appear for his court hearing on January 4, 2010. (SAC, ECF No. 62 at 7–9, 18; City Exs., ECF No. 149-2, Ex. 2 at 5.) Plaintiff's bail was forfeited. (City Exs., ECF No. 149-2 Ex. 2 at 5.) Henry L. Guerrero of Guerrero Bail Bonds unsuccessfully tried to locate Arellano between January and June of 2010. (Pl.'s Opp. ECF No. 62 at 12, 18, 22.) In July 2010, Arellano escaped from a Mexican Immigration facility in Mexicali, Mexico, and was wanted by Mexican authorities. (SAC, ECF No. 62 at 44; County P. & A. Supp. Summ. J. Mot. [County P. & A.], ECF No. 148-1 at 1; City P. & A. Supp. Summ. J. Mot. [City P. & A.], ECF No. 149-1 at 2; City Exs., ECF No. 149-2 Ex. 8 at 36.)

On November 7, 2010, Deputy U.S. Marshals ("DUSM") Jesus Guerrero and P. Beal and agents from the Mexican State Police Investigative Liaisons (also known as "Policia Estatal Preventiva," or "PEP") located and arrested Arellano inside a hotel lobby in Tijuana, Mexico. (Pl.'s Opp. ECF No. 62 at 7, 10, 18, 44; County P. & A., ECF No. 148-1 at 2; *see also* County Exs., ECF No. 148-3, Ex. 3 at 33; City P. & A., ECF No. 149-1 at 2; *see also*, City Exs., ECF No. 149-2, Ex. 8 at 36; Pl.'s Surreply, ECF No. 168 at 2.) Arellano was taken into custody and transported to PEP headquarters in Tijuana where he was held overnight. (SAC, ECF No. 62 at 11, 28, 44; *see* County Exs., ECF No. 148-3 at 33; City Exs., ECF No. 149-2 at 36.) On November 8, 2010, PEP transported Plaintiff to Mexicali to interview him at the Mexican Immigration regarding his prior escape. (Pl. Opp., ECF No. 62 at 11, 17, 44; County Exs., ECF No. 148-3, Ex. 3 at 33; City Exs., ECF No. 149-2, Ex. 8 at 36.) Later that same day, PEP notified DUSM Guerrero that Arellano was transported back to Tijuana and would be staying another night in Mexican custody. (SAC, ECF No. 62 at 44; County Exs., ECF No. 148-3, Ex. 8 at 34; City Exs., ECF No. 149-2, Ex. 3 at 37.)

On November 10, 2010, DUSM Guerrero was notified by PEP that Arellano had been processed by Mexican immigration. (SAC, ECF No. 62 at 44; County Exs., ECF No. 148-3, Ex. 3 at 34; City Exs., ECF No. 149-2, Ex. 8 at 37.) At approximately 5:00 p.m., U.S. Marshals and Customs and Border Patrol took custody of Arellano at the San

Ysidro Port of Entry. (*Id.*) Deputy U.S. Marshals transported Plaintiff to Defendant County's Central Jail. County jail officials declined to accept Arellano for booking until he was medically cleared because Plaintiff told the jail nurse "he had been physically hurt while in Mexican custody and [had] extensive discomfort around his left rib-cage area of his upper torso." (SAC, ECF No. 62 at 45; *see also* County Exs., ECF No. 148-3, Ex. 3 at 34; City Exs., ECF No. 149-2, Ex. 8 at 37.) Deputy U.S. Marshals transported Arellano to the emergency department of Scripps Mercy Hospital where x-rays were taken of Arellano's upper torso, revealing "slight contusions." Hospital personnel found Arellano "was otherwise clear" and discharged him. (SAC, ECF No. 62 at 45; *see also* County Exs., ECF No. 148-3, Ex. 3 at 34; City Exs., ECF No. 149-2, Ex. 8 at 37.) Deputy U.S. Marshals returned Arellano to Defendant County's Central Jail where he was booked into custody. (SAC, ECF No. 62 at 45; *see also* County Exs., ECF No. 148-3, Ex. 3 at 34; City Exs., ECF No. 149-2, Ex. 8 at 37.)

## IV.   PLAINTIFF'S CLAIMS AND EVIDENCE

Arellano alleges the officers who arrested him in Tijuana used excessive force when taking him into custody. (SAC, ECF. No. 62 at 7, 10.) He further alleges the officers admitted working for Municipal Defendants and the PEP officers "were working as [their] agents." (*Id.*) Arellano claims six to eight officers were involved and all were "dressed in civil clothing." (*Id.*) Arellano contends the officers, both Mexican and American, assaulted him inside the hotel lobby, handcuffed him and dragged him out of the hotel to a white SUV. He alleges agents assaulted him again while he was on the ground next to the SUV. (SAC, ECF. No. 62 at 10, 18–19.) Arellano claims a U.S. Marshal kicked him in the ribs while other officers stomped on his head and slammed him to the ground. (*Id.*) He claims the officers only stopped after his ex-wife, sister, and son intervened. (*Id.*) Arellano contends he sustained "several cuts on [his] head with bumps, painful ribs that further [sic] were in purple color bruised up, pain on legs [and] body" as a result of the beatings. (*Id.*)

Arellano further alleges that once he was in custody in Mexico, officers "tortured"

7

him while he was inside the white SUV, again in the "middle of the desert" on the way to Mexicali, and a third time in an office in Mexicali. (*Id.* at 19.) He claims officers repeatedly tortured him, employing several methods, including: (1) using an "electrical Tazer on [his] private parts and all over [his] body" until the battery ran out and he smelled burnt skin or hair; (2) firing bullets close to his head and then putting him inside "a very small dog cage"; (3) putting a plastic bag over his head while others "kicked [his] stomach and stomped on [his] head" for four to six hours; (4) "using a hot lamp or light bulb or bright metal" to burn his body; (5) sodomizing him with an object; and (6) restraining and pouring water on his face that "made [him] feel like [he] was drowning." (*Id.*) Arellano states that "[he] was hit for praying to God" and his "cross was thrown out because according to [an officer] 'religion is not for people like [him]'" (*Id.* at 25.)

Arellano claims the officers who abused him told him they "were authorized to do whatever they want in Mexico." (*Id.* at 20.) He contends they robbed him and threatened to kill him if he did not ask his family in America to wire them money. (*Id.*) Plaintiff alleges the officers told him:

> [A]s far that they know they haven't broken no law because neither the task force or [sic] San Diego Police Dep. prohibit them to do what they did to me while executing a warrant for them. And since there is no regulation, and because at other times they have done the same things to other people and the task force as well as S.D. Police has not told them not to do such things, in fact it encourages them to keep on doing such stuff on us… [sic] True or not true what they told me but that's what they said.

(*Id.*) Arellano alleges the officers responsible for his injuries transported him between Mexicali and Tijuana holding facilities between November 7 and November 10, 2010. (*Id.* at 10–11.) As a result, Arellano claims to have suffered from "multiple bruises" to his ribs, "bumps" on his head, and "expressions of pain and confusion." (*Id.* at 7.) Since his incarceration, Arellano claims he suffers from seizures and painful nerve damage. (*Id.*)

In his SAC, Arellano asserts his constitutional rights were violated under 42 U.S.C. § 1983 and seeks damages for the physical and mental pain and suffering resulting from

8

the excessive force and torture he contends occurred in Mexico. (SAC, ECF No. 62 at 17–18.) And while the Court found Arellano's § 1983 claims against the City and County of San Diego sufficient to survive the Municipal Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see* Order, ECF No. 87 at 8–9), Arellano does not raise any claim of excessive force against individual persons who were purportedly employed by either Municipal Defendant.[5]

Instead, Arellano alleges Municipal Defendants are liable under § 1983 for the following reasons: (1) the officers that harmed him admitted working for Municipal Defendants; (2) Mexican authorities (PEP) were acting as agents of Municipal Defendants to execute an American warrant; and (3) Municipal Defendants are responsible for the officers' actions because they had a policy authorizing agents to violate Arellano's rights while executing a warrant; or alternatively, that Municipal Defendants failed to train their agents to refrain from violating his rights. Arellano claims in doing so, Municipal Defendants violated his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights. (*See* SAC, ECF No. 62 at 10–15, 23–24.)

## V.   DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Municipal Defendants have filed motions for summary judgment, both arguing there is no genuine dispute as to whether either entity, or any officer employed by either entity, were present for, or involved in, Arellano's apprehension, arrest or detention in Mexico. (*See* County P. & A, ECF No. 148-1 at 6–8; City P. & A., ECF No. 149-1 at 6.) Moreover, even assuming a genuine dispute exists as to whether agents of Municipal Defendants participated in Arellano's arrest in Mexico, Municipal Defendants argue they

---

[5] As noted above, Plaintiff's 42 U.S.C. §§ 1985(3) and 1986 causes of action against Municipal Defendants were dismissed for failure to state a claim. (*See* ECF No. 87.) Further, to the extent Arellano contends Municipal Defendants are liable under § 1983 for the execution of the warrant that led to his arrest, this Court found Arellano failed to state a claim because "a warrant for failure to appear issues from a court, not a municipality." (Order on MTD, ECF No 87 at 9, fn. 6 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).)

would still be entitled to summary judgment because there is no genuine dispute as to whether any purported constitutional violation was the result of a custom or policy of Municipal Defendants, or the result of a failure to train by Municipal Defendants. (*See* County P. & A., ECF No. 148-1 at 8–10; City P. & A., ECF No. 149-1 at 6–8.)

### A.     Standard of Review on Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

As the moving parties, the Municipal Defendants "initially bear[] the burden of proving the absence of a genuine issue of material fact." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Municipal Defendants may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

While Arellano bears the burden of proof at trial, Municipal Defendants "need only prove that there is an absence of evidence to support [Plaintiff's] case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning

1    an essential element of the nonmoving party's case necessarily renders all other facts

2    immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long

3    as whatever is before the district court demonstrates that the standard for entry of

4    summary judgment . . . is satisfied." *Id.* at 323.

5        If Municipal Defendants, as the moving parties, meet their initial responsibility, the

6    burden then shifts to Arellano to establish a genuine dispute as to any material facts that

7    exist. *Matsushita*, 475 U.S. at 586. To establish the existence of this factual dispute,

8    Arellano must then present evidence in the form of affidavits and/or admissible discovery

9    material to support his contention that a genuine dispute exists. *See* Fed. R. Civ. P.

10   56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. "A [p]laintiff's verified complaint may be

11   considered as an affidavit in opposition to summary judgment if it is based on personal

12   knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d

13   1122, 1132 n.14 (9th Cir. 2000) (en banc).

14       Plaintiff must also demonstrate that the fact in contention is material, *i.e.*, a fact

15   that might affect the outcome of his suit under the governing law, *see Anderson v. Liberty*

16   *Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors*

17   *Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, *i.e.*, the

18   evidence is such that a reasonable jury could return a verdict for him. *See Wool v.*

19   *Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

20       Finally, district courts must "construe liberally motion papers and pleadings filed

21   by pro se inmates and . . . avoid applying summary judgment rules strictly." *Thomas v.*

22   *Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). However, if Plaintiff "fails to properly

23   support an assertion of fact or fails to properly address [Defendant's] assertion of fact, as

24   required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the

25   motion . . . ." Fed. R. Civ. P. 56(e)(2). Nor may the Court permit Plaintiff, as the

26   opposing party, to rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*,

27   794 F.2d 457, 459 (9th Cir. 1986). A "motion for summary judgment may not be

28   defeated. . . by evidence that is 'merely colorable' or 'is not significantly probative.'"

1  *Anderson*, 477 U.S. at 249–50; *Hardage v. CBS Broad. Inc.*, 427 F.3d 1177, 1183 (9th
2  Cir. 2006); *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016) ("'[M]ere allegation
3  and speculation do not create a factual dispute for purposes of summary judgment.'")
4  (quoting *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081 (9th Cir. 1996)) (brackets in
5  original)).

6    **B.    *Monell* Claims Under 42 U.S.C. § 1983**

7    To prevail on a claim for violation of constitutional rights under 42 U.S.C. § 1983,
8  a plaintiff must prove two elements: (1) that a person acting under color of state law
9  committed the conduct at issue; and (2) that the conduct deprived the claimant of some
10 right, privilege or immunity conferred by the Constitution or the laws of the United
11 States. 42 U.S.C. § 1983; *Nelson v. Campbell*, 531 U.S. 637, 643 (2004). Municipalities
12 cannot be held vicariously liable under section 1983 for the actions of their employees.
13 *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "Instead, it
14 is when execution of a government's policy or custom, whether made by its lawmakers or
15 by those whose edicts or acts may fairly be said to represent official policy, inflicts the
16 injury that the government as an entity is responsible § 1983." *Id.* at 694.

17    To establish municipal liability under § 1983, a plaintiff must show that "a policy,
18 practice, or custom of the entity" is "a moving force behind a violation of constitutional
19 rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). In doing so, "a
20 direct causal link between municipal policy or custom and the alleged constitutional
21 deprivation." *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (quoting
22 *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386 (1989)). Municipal liability is
23 contingent on an actual violation of the Plaintiff's constitutional rights, even if no
24 individual officer is liable for the violations. *Forrester v. City of San Diego*, 25 F.3d 804,
25 808 (9th Cir. 1994). *Monell* liability cannot, however, be founded on a respondeat
26 superior theory. *Canton*, 489 U.S. at 385.

27    Put more simply, to hold a government entity liable under § 1983, Arellano must
28 show that the alleged unconstitutional act results from "(1) an employee [of the entity]

acting pursuant to an expressly adopted official policy; (2) an employee acting pursuant to a longstanding practice or custom; or (3) an employee acting as a 'final policymaker.'" *Delia v. City of Rialto*, 621 F.3d 1069, 1081–82 (9th Cir. 2010) (quoting *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003); *see Ulrich v. City & County of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002); *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992).

Here, Arellano's theory of municipal liability under § 1983 rests on his assertion that the undercover officers who caused his constitutional injuries, both American and Mexican, were acting under the color of state law as employees of Municipal Defendants or *de facto* agents acting pursuant to an unlawful policy adopted by Municipal Defendants. (SAC, ECF No. 62 at 7–9, 13–16.) For the reasons discussed below, the Court concludes Municipal Defendants are entitled to summary judgment because there is no evidence to establish a genuine dispute as to whether either municipal entity, or any of their agents, were involved in Arellano's apprehension, arrest and/or detention in Mexico. Furthermore, even assuming Arellano suffered constitutional injury, there is no genuine dispute as to whether Arellano's injuries were the result of policies, procedures or a failure to train by Municipal Defendants.

### 1.    Deprivation of Rights by Municipal Defendant Employees

Municipal Defendants contend no law enforcement officers from the City or County were present for, or involved in, Arellano's November 7, 2010 apprehension or subsequent three-day detention in Mexico. (*See* County's P. & A., ECF No. 148-1 at 5; City P. & A., ECF No. 149-1 at 6.) As such, Municipal Defendants argue there is no genuine dispute as to whether any of the officers or agents who apprehended, arrested and detained Arellano in Mexico, were employed by the County or City of San Diego.

As discussed above, liability will lie against Municipal Defendants under § 1983 only if Arellano's purported constitutional injuries were "caused by employees [of the Municipal Defendants] acting pursuant to an official policy or 'longstanding practice or custom,' or that the injury was caused or ratified by an individual with 'final policy-

13

making authority.'" *Chudacoff v. Univ. Med. Ctr. of S. Nevada*, 649 F.3d 1143, 1151 (9th Cir. 2011) (quoting *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (internal quotation marks and citation omitted)); *see also Monell*, 436 U.S. at 694.

Municipal Defendants point to evidence which shows no City or County employees were involved in Arellano's apprehension and detention in Mexico.[6] A copy of the United States Marshals Service's Report of Investigation ("USMS ROI"), prepared by DUSM Jesus Guerrero, concerning Arellano's arrest on November 7, 2010 was submitted by both Arellano and Municipal Defendants.[7] The USMS ROI was dated November 11, 2010, signed by "JESUS GUERRERO Deputy U.S. Marshal" and approved by "KEITH JOHNSON Assistant Chief Deputy U.S. Marshal" and details the agencies that initiated Arellano's arrest, stating: "On 11/07/2010 MIL DUSM J. Guerrero and case agent SDUSM P. Beal conducted an operation in conjunction with Mexican State Police Investigative Liaisons—PEP (Policia Estatal Preventiva) in efforts to re-capture [Arellano] in Tijuana, B.C. Mexico." (County Exs., ECF No. 148-3, Ex. 3 at 33.) The USMS ROI documents that PEP personnel took custody of Arellano in Mexico immediately after the arrest and did not deport him to the United States and release him

---

[6] The County requests this Court to take judicial notice of Petitioner's Second Amended Complaint and the California Court of Appeal's opinion in Petitioner's criminal case. (County Req. Jud. Not., ECF. No. 148-2 at 1–2.) While a court may take judicial notice of matters of public record, (*see* Fed. R. Evid. 201) this Court need not take judicial notice of Plaintiff's Second Amended Complaint—the operative pleading in this case. *See Nanavati v. Adecco*, 99 F. Supp. 3d 1072, 1075 (N.D. Cal. 2015) ("The Court need not take judicial notice of Exhibit A, which is the operative pleading in this action."). Further, the California Court of Appeal Opinion in *People v. Arellano*, Case No. D059737, filed on January 14, 2013, is wholly irrelevant to this Court's determination of the County's summary judgment motion. Therefore, the Court **DENIES** Defendant County's request for judicial notice as **MOOT**.

[7] Plaintiff includes the report as Exhibit A attached to his SAC. (SAC, ECF No. 62 at 44-45.) Defendant County submits it as Exhibit 3, attached to the declaration of Lieutenant Scott Amos. (ECF No. 148-3 at 32–34.) And Defendant City attaches the report as Exhibit 8, appended to the declaration of Sergeant David Contreras. (City Ex.s, ECF No. 149-2, Ex. 8 at 36–37.)

into U.S. Marshal custody until three days later. The USMS ROI states, in relevant part:

> Based on very detailed information obtained through extensive investigations, DUSM J. Guerrero and PEP Agents were able to locate and subsequently arrest Arellano at El Rey Hotel, located in [Tijuana, Mexico].
>
> With some resistance on his part, Arellano was taken into custody at approximately 22:00 hrs in the lobby of the hotel as he was returning from dinner at a local establishment. ARELLANO was immediately transported to PEP headquarters in Tijuana where he underwent the preliminary documentation for further disposition with Mexican Immigration (INAMI). It was later determined [Plaintiff] was to be held overnight at PEP headquarters . . . for further disposition with INAMI . . .. At approximately 11:45 hours MIL DUSM Guerrero was notified by PEP MIL contacts that Arellano was going to be transported to INAMI in Mexicali, where he had been detained back in July and where he had escaped from custody on that occasion. It was revealed Mexican officials were to conduct an investigation as to that event which had been made public through the local media and to which apparently ARELLANO was allowed to escape.
>
> . . . .
>
> On 11/08/2010 MIL DUSM Guerrero was notified by PEP MIL contacts that ARELLANO was going to be interviewed further at INAMI in Mexicali regarding the escape incident for which the Mexican Attorney General's Officer (PGR – Procuraduria General de la Republica) was continuing to investigate.
>
> . . . .
>
> [On 11/10/2010] MIL DUSM received another call from PEP Agents stating they had just cleared ARELLANO from INAMI in Tijuana and were transporting him to the pedestrian crossing at the SYPOE with an estimated arrival time in 20 minutes. DUSM Guerrero immediately headed to the Port and advised CBP Officials regarding the pending transfer of custody from Mexican Authorities of International Fugitive ARELLANO.
>
> MIL DUSM Guerrero, along with duty DUSM R. Romero, arrived at SYPOE and took custody of ARELLANO from CBP Officer M Acevedo at approximately 17:00 hrs.  DUSMS Guerrero and Romero transported ARELLANO to the San Diego County Sheriff's Office Central jail for booking and processing without incident. Once at the jail, DUSM Guerrero was advised by the nurse that the booking process station ARELLANO was

going to be medically refused for booking at that time pending x-rays and examination by an outside provider in order to assess his claims that he had been physically hurt while in Mexican custody and extensive discomfort around his left rib-cage area of his upper torso.

DUSMS Guerrero and Romero transported ARELLANO to Scripps' Mercy Hospital in San Diego where he was subsequently admitted by the emergency room staff. ARELLANO was evaluated and x-rays of his upper torso area were taken revealing he had slight contusions but was otherwise cleared for admittance at the county jail.  ARELLANO was medically cleared and released. . . at approximately 21:00.

ARELLANO was transported back to the county jail by DUSMS Guerrero and Romero where he was booked and processed without incident.

(*Id.* at 33–34; *see also* City Exs., ECF No. 149-2, Ex. 8 at 36–37.)

In sum, according to the USMS ROI, the City and County of San Diego were not among the law enforcement entities whose agents participated in Arellano's arrest or detention in Mexico. Arellano was apprehended by Mexican authorities, working with United States Marshals. Arellano was then held in Mexico by Mexican authorities and questioned by Mexican authorities for Mexican law enforcement purposes from the time of his November 7, 2010 arrest until his deportation to the United States on November 10, 2010. At that point, Arellano was transferred into the custody of two United States agencies, U.S. Customs and Border Protection and the U.S. Marshals Service, before being transported to Defendant County's jailing facility. There, County Sheriff's Department staff refused to take Arellano until he was medically cleared. (County Exs., ECF No. 148-3, Ex. 3 at 34.) Finally, after being evaluated at the hospital, the U.S. Marshals turned Arellano over to County jail officials at approximately 9:00 p.m. on November 10, 2010. (*Id.*)

Declarations of law enforcement officers submitted by Municipal Defendants are consistent with the information contained in the USMS ROI and further support Municipal Defendants' assertions that the entities were not involved in Arellano's arrest

in Mexico.[8] The County submits a declaration from Lieutenant Scott Amos, employed with San Diego County Sheriff's Department. (*See* Declaration of S. Amos in Supp. of County Mot. for Summ. J., [hereafter "Amos Decl."] ECF No. 148-3 at 1–4.) In his declaration, Lt. Amos states his agency "has no record of any deputies making contact with Plaintiff prior to his booking on November 10, 2010." (*Id.* at 3, ¶ 6.) Lt. Amos reviewed the USMS ROI and noted "three other agencies," the Mexican State Police, U.S. Customs and Border Patrol, and U.S. Marshals Service, "had custody of Plaintiff prior to him being booked into jail." (*Id.* at 4, ¶ 9.) Therefore, "the San Diego Sheriff's Department could not have caused any of Plaintiff's alleged injuries." (*Id.*) The County further submits its jail booking record attached to Lt. Amos' declaration as Exhibit 2, which lists "J. Guerrero," as the arresting agent and "R. Romero" as the transporting agent. (*See* County Exs., ECF No. 148-3, Ex. 2 at 31.) Lt. Amos states in his declaration that "J. Guerrero and R. Romero" are "two U.S. Marshals" and specifically, J. Guerrero is "is not a deputy Sheriff." (*See* Amos Decl., ECF No. 148-3 at 3, ¶¶ 8–9.)

Likewise, the City submits a declaration from Sergeant David Contreras, employed with San Diego Police Department. (Declaration of D. Contreras in Supp. of City Mot. for Summ. J., ECF No. 149-2, Ex. 6 [hereafter "Contreras Decl."] ECF No. 149-2 at 20–

---

[8] Arellano argues declarations submitted by Municipal Defendants should not be considered for summary judgment they are "not based on personal knowledge" and contain "merely conclusions" made without "any factual basis." (Pl.'s Opp., ECF No. 168 at 8.) Arellano contends the declarants were not present when he was arrested in Mexico and therefore lacked "personal knowledge" of what took place there. (*Id.*) Arellano also argues the declarants' statements concerning officers' training, as applied in Mexico, lack foundation. (*Id.*) Rule 56(c) provides that "declaration[s] used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c). Here, Municipal Defendants' declarations were properly submitted and include evidence to show the declarants are competent to testify on the contents of their declarations. (*See* County Exs., ECF No. 148-3 at 1–2; City Exs. ECF. No. 149-2 at 20, 23.) Therefore, to the extent Arellano objects to the testimony provided in the declarations of Amos, Contreras and Shaw, his objection is **OVERRULED**.

21.) Sgt. Contreras states in his declaration that during the month of Arellano's arrest, he was in charge of "overseeing the San Diego Police Department's CIU (Criminal Intelligence Unit) Mexican Liaison Unit" and "served as a liaison between American and Mexican law enforcement." (Contreras Decl., ECF No. 149-2 at 20, ¶ 4.) Sgt. Contreras states he "was familiar with SDPD's operations conducted in Mexico, including all entries by San Diego Police Department officers into Mexico for the purpose of conducting any law enforcement activities" and he also reviewed the USMS ROI. (*Id.* at ¶ 3.) Sgt. Contreras attests he has "no recollection of any San Diego Police Department officer being involved in this operation." (*Id.* at ¶ 5.) Sgt. Contreras additionally states he reviewed a photograph of Arellano and does not recognize him. (*Id.* at ¶ 6.)

The City also submits the declaration of Lieutenant Steven Shaw, who is employed with the San Diego Police Department. (Declaration of S. Shaw in Supp. of City Mot. for Summ. J., ECF No. 149-2, Ex. 7 [hereafter "Shaw Decl."] at 22–25.) Lt. Shaw states he has been employed with San Diego Police Department for 31 years and is the Lieutenant for the CIU. (*Id.* at 23, ¶ 1.) Lt. Shaw states the Mexican Liaison Unit is part of the CIU and "serves as a conduit of information and a liaison between the SDPD and Mexican officials" and that the "San Diego Police Department has no record of any SDPD officer being present during the arrest of [Plaintiff], on or about November 7, 2010, in Tijuana, Mexico." (*Id* at ¶¶ 3–4.)

Municipal Defendants' evidence suggests no employee of the City or County was involved in arresting and detaining Arellano in Mexico. The USMS ROI submitted by all parties shows Mexican authorities apprehended and arrested Arellano on November 7, 2010, working in conjunction with the U.S. Marshals. (*See* County Exs., ECF No. 148-3, Ex. 3 at 33.) Declarations submitted by Municipal Defendants are consistent with the information in the USMS ROI, indicating that no agents or employees of Municipal Defendants were involved in the operation across the border. Evidence presented by Municipal Defendants further shows that after his arrest, Arellano was held in Mexico, by Mexican authorities, and questioned for Mexican law enforcement purposes, until he was

turned over to U.S. Immigration on November 10, 2010. (*Id.* at 33–34.) In sum, the evidence presented by Municipal Defendants suggests the County took custody of Arellano at 9:00 p.m. on November 10, 2010 and the City was not involved in Arellano's arrest or detention whatsoever. (*See id.*)

Based on the foregoing, this Court concludes Municipal Defendants have submitted sufficient evidence to meet their burden of demonstrating the absence of a genuine dispute of material fact as to Arellano's claim that employees of Municipal Defendants participated in, or were present for, Arellano's arrest and detention in Mexico. *See Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Oracle Corp.*, 627 F.3d at 387.

### 2.    *Municipal Policy, Regulation, Custom of Using Outside Agents*

Arellano argues that Municipal Defendants are liable because it was their policy to use agents employed by outside entities to violate his constitutional rights. Arellano argues that even if employees of Municipal Defendants were not directly involved in his apprehension and detention in Mexico, the agents who were involved were operating as *de facto* agents of Municipal Defendants. (SAC, ECF No. 62 at 12–14.) Specifically, Arellano argues Municipal Defendants had a custom or policy of allowing Mexican law enforcement to use excessive force during his arrest and detention in Mexico. (*Id.* at 30.)

"Liability may attach to a municipality only where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005); *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984 (9th Cir. 2002) (citing *Monell*, 436 U.S. at 694). A policy can be established if one of the following conditions are met: (1) "the city employee committed the alleged constitutional violations pursuant to the city's official policy or custom," (2) the alleged conduct was "a deliberate

choice" made by an employee with final policymaking authority, or (3) an official with policymaking authority delegated or ratified the conduct. *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995) (citations and quotations omitted).

Municipal Defendants point to evidence which suggests there was no official custom or policy allowing foreign law enforcement officials to use excessive force against individuals they apprehend, even if those individuals are ultimately handed over to employees of Municipal Defendants. A "custom" for purposes of municipal liability is a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Proof of random acts or isolated events is insufficient to establish custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). But a plaintiff may prove "the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992). Once a showing is made, a municipality may be liable for its custom "irrespective of whether official policy-makers had actual knowledge of the practice at issue." *Thompson*, 885 F.2d at 1444.

Municipal Defendants submit evidence demonstrating they lack a policy or practice, written or otherwise, that condones widespread constitutional violations. (*See* ECF No. 148-1 at 7–9; ECF No. 149-1 at 6–7.) First, the County points to a copy of the Sheriff Department's Use Force Guidelines ("SDSO Policy") as Exhibit 1 to Lt. Amos' declaration. (*See* Amos Decl. ECF No. 148-3, Ex. 1 at 5–24.) Lt. Amos refers to Exhibit 1 in his declaration and states SDSO Policy was in effect at the time of Arellano's arrest. (*Id*. at 2, ¶ 3.) Lt. Amos states he is "familiar with the Department's policies and procedures," conducts regular reviews of these policies, and ensures deputies under his supervision are familiar with them. (*Id*. at 1, ¶ 2.) Lt. Amos states according to SDSO Policy: "It shall be the policy of this Department whenever any Deputy Sheriff, while in the performance of his/her official law enforcement duties, deems it necessary to utilize

any degree of physical force, the force used shall only be that which is necessary and objectively reasonable to effect the arrest, prevent escape or overcome resistance. . . .The use of force and subsequent reporting must be in accordance with the procedures set forth in these guidelines (see Policy and Procedures Section 6.48)." (*See id.* at ¶ 3; *see also* County Exs., ECF No 148-3 at 6.) Lt. Amos states that deputies are trained in accordance with SDSO Policy "to use force only when necessary and, when doing so, to only such force as is reasonable to 'effect arrest, prevent escape or overcome resistance.'" (Amos Decl., ECF No. 148-3 at ¶ 3.)

Furthermore, Lt. Amos attests the SDSO Policy is "not location-specific" and that it governs the deputies' conduct in jurisdictions outside of San Diego, including Mexico. (*Id.* at ¶ 4.) Finally, he states the Sheriff's Department "does not have a policy or practice of encouraging" deputies to use excessive force on arrestees in Mexico, or a policy authorizing Mexican authorities to used excessive force on arrestee in Mexico. (*Id.* at ¶ 5) Lt. Amos added that "[i]f Mexican police did use unnecessary physical force on an arrestee, such conduct would be *without* Department authorization or approval." (*Id.* (emphasis added).)

Similarly, in support of summary judgment, the City submits a copy of the San Diego Police Department's Use of Force Procedure ("SDPD Policy") as Exhibit 7A to the declaration of Lt. Shaw.  (Shaw Decl. ECF No. 149-2, Ex. 7A at 26–35.) The SDPD Policy states, "The San Diego Police Department recognizes and respects the value of human life, having this as its highest priority. It is the policy and practice of the Department to train its personnel in the use of the safest, most humane restraint procedures and force options currently known. . .. ¶ In the performance of their duties, officers may encounter situation where the use of force is reasonable in order to affect a detention or arrest, to overcome resistance, or to protect themselves or others. . .. Only force that is reasonable to overcome resistance may be used to affect a detention or an arrest." (*Id.* at 26–27.)

In addition, Lt. Shaw states he is familiar with "the policies, procedures, and

3:14-cv-2404-GPC-KSC

customs of the San Diego Police Department" which includes the policy "that officers conducting operations in Mexico do not make arrests, do not maintain custody of individuals, do not interrogate individuals, and do not use any force on individuals." (*Id.* at 23.) He states that "[e]xcessive or unreasonable force by officers is not tolerated" or condoned by the SDPD. (*Id.* at 24.) Lt. Shaw states SDPD Policy was in effect on the date of Arellano's arrest and "applies to all San Diego police officers at all times and in all locations, including during operations in Mexico." (*Id.*) Finally, both Lt. Shaw and Sgt. Contreras similarly attest that the police department "does not have a policy of authorizing its officers, or any agents working for or with the Department, to use excessive force … ¶ … [or] to violate any individual's Constitutional rights when outside its jurisdiction, including in Mexico. At no time were San Diego police officers told or trained that this conduct was authorized." (Conteras Decl., ECF No. 149-2 at 21 ¶ 10; *see also* Shaw Decl., ECF No. 149-2 at 25, ¶ 13.)

Based on this showing, this Court concludes Municipal Defendants have submitted sufficient evidence to meet their initial burden of demonstrating the absence of a genuine dispute of material fact as to Arellano's claims that Municipal Defendants had a policy or practice of violating individuals' constitutional rights in Mexico. *See Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 323).

### 3.    *Failure to Train*

Arellano alternatively claims Municipal Defendants failed to train their officers to not commit constitutional violations in Mexico, and that they knew their officers committed misconduct in Mexico but did not stop it. (SAC, ECF No. 62 at 15–16.) "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). This failure to train must show the municipality's deliberate indifference to the rights of its inhabitants. *Canton*, 489 U.S. at 389. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or

obvious consequence of his action." *Thompson*, 563 U.S. at 61 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)).

Municipal Defendants argue they have a longstanding policy of providing adequate training regarding the use of force for police officers and Sheriff's deputies. (County P. & A., ECF No. 148-1 at 9; City P. & A., ECF No. 149-1 at 9.) The evidence submitted by Municipal Defendants is similarly sufficient to show that at the time of Arellano's arrest, the City and County both provided training for its officers regarding the use of force. (*See* County Exs., ECF No. 148-3 at 5–24; City Exs., ECF No. 149-2 at 26–35.) Having reviewed all of the evidence presented, the Court finds no genuine dispute of material fact regarding Arellano's *Monell* claims. Even viewed in light of most favorable to the non-moving party, there is no evidence of a widespread policy, practice, or deliberate indifference of violating individuals' constitutional rights in Mexico. Given this total lack of support, the Court finds Municipal Defendants have satisfied their burden. *See Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 323).

## VI.   PLAINTIFF'S REBUTTAL

Having concluded Municipal Defendants have satisfied their initial burden of demonstrating an "absence of evidence to support [Arellano's] case," the burden now shifts to Arellano to rebut summary judgment by establishing there is a genuine dispute as to material facts. *See Matsushita*, 475 U.S. at 586. To do so, Arellano must "produc[e] competent evidence and cannot rely on mere allegations or denials in the pleadings." *Id*. As the non-moving party, Arellano cannot oppose a properly supported summary judgment by "rest[ing] on mere allegations or denials of his pleadings." *See Anderson*, 477 U.S. at 256.

### A.   Deprivation of Rights by Municipal Defendants

Arellano has not submitted sufficient probative, affirmative, competent, and/or admissible evidence to rebut Municipal Defendants' showing that there are no genuine issues of material fact to be resolved concerning his § 1983 claim that Municipal Defendants caused his constitutional injuries in Mexico. Arellano's evidence consists of

his own declaration, in the form of his Opposition to Summary Judgment and SAC, and Exhibits A through D, attached to the SAC.[9] (Pl.'s Opp., ECF No. 157 at 3.) Exhibit A is the USMS ROI authored by USDM Jesus Guerrero concerning Arellano's arrest on November 7, 2010, Exhibit B is a webpage printout containing information for the San Diego Regional Fugitive Task Force, and Exhibits C and D are copies of correspondence. (SAC, ECF No. 62, at 44–50.) Construing the facts and all reasonable inferences in Arellano's favor, for the reasons outlined below, Arellano's declaration and exhibits are insufficient to raise a genuine dispute as to whether Municipal Defendants' employees or agents caused his injuries in Mexico.

First, to support his claim that the officers who arrested him identified as employees or agents working for Municipal Defendants, Arellano relies on conclusory and hearsay statements as evidence. (*See* SAC, ECF No. 62; Pl.'s Opp., ECF No. 157.) He contends he was apprehended in Mexico by "eight officers" who were all "dressed in civil[ian] clothing." (SAC, ECF No. 62 at 10.) Arellano relies on the USMS ROI to support his claims that DUSMs Guerrero and Beal were assigned to "re-capture" him and worked in conjunction with PEP. (*Id.* at 12.) He argues, however, that "the facts are that officers told me they work for municipals in question, during a time they arrested me." (*Id.* at 13.) He states that agents had "dual authority, such as working for PEP and U.S. Municipals." (*Id.*) He goes on to "conclude this is because it's what the officers told me when they mention names of municipals." (*Id.*)

Arellano's assertions are unsupported by any foundational facts showing he is competent to testify on the matters asserted. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or

---

[9] In his Opposition, Arellano declares "under penalty of perjury that everything state [in the opposition] is true and correct as to my own personal knowledge. This includes the [Second Amended] Complaint (ECF No. 62), motions opposing dismissals and this opposition of summary judgment." (Pl.'s Opp., ECF No. 157 at 11.) As such, Arellano's SAC may be considered an affidavit in opposition to summary judgment to the extent it is "based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez*, 203 F.3d at 1132 n.14.

declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible evidence and show the affiant or declarant is competent to testify on the matters stated.") Arellano offers only his own vague assertions that at least one agent who arrested him in Mexico told him they were working for "Municipals." (SAC, ECF No. 62 at 10.) Arellano concedes "I didn't know who was who due to all of them wearing civil [sic] clothing and all I have is my conclusion that these officers are agents from all different agenc[ies] mention[ed] here." (*Id.* at 14.) Even if this Court assumes Arellano's references to "municipals" and "agencies" refers to the City and County of San Diego, this evidence alone is insufficient to raise a genuine dispute on summary judgment. The Court cannot grant or deny summary judgment based on inadmissible hearsay in a conclusory, uncorroborated, self-serving declaration that includes facts beyond the Arellano's personal knowledge. *See, e.g.*, *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1059 n.5, 1061 (9th Cir. 2002). Arellano's bare assertion that one or more unidentified and uniformed officers told him he or she was employed by Municipal Defendants is unsupported by any foundational facts showing Arellano is competent to testify. *See Allen v. International Telephone and Telegraph Corp.*, 164 F.R.D. 489, 492 (D. Ariz. 1995) ("It is not enough that an affiant assert that he or she has personal knowledge of the facts recited; the facts themselves must show that they are matters known to the affiant personally and are not based upon hearsay or upon 'information and belief.'").

The statements from the unidentified agent or agents Arellano relies upon are hearsay. *See* Fed. R. Evid. 801(c) (defining hearsay as out-of-court statements offered for the truth of the matter asserted); *see also Crayon v. Hill*, 2016 WL 282176 (E.D. Cal. Jan 22, 2016) (holding the plaintiff's testimony regarding what a prison doctor at told him was "hearsay and cannot be properly considered in opposition to a summary judgment motion"). Arellano bears the burden but fails to show the hearsay statements on which he relies are admissible. *See Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1051 (9th Cir. 2012) (stating the party seeking admission of the evidence bears the burden of

showing its admissibility).

Arellano claims the officers who made the statements were working undercover and wore civilian clothing. (SAC, ECF No. 62 at 10.) He states, "[M]y own declaration under oath that I observed a [sic] (Doe) officer told me he was an officer of San Diego Police, . . . should be enough to satisfy [the personal knowledge] requirement." (*See* Pl.'s Opp., ECF No. 157 at 2–3.) He contends the statements are admissible under Federal Rule of Evidence 801(d)(2)(D). (*See* Pl.'s Opp., ECF No. 157 at 2, 10; Pl.'s Surreply, ECF No. 168 at 1.) Rule 810(d)(2)(D) provides that an admission by a party-opponent, including "a statement by the party's agent" or employee, made "within the scope of agency or employment," is not hearsay. Fed. R. Evid. 801(d)(2)(D). However, as discussed above, no genuine dispute exists to show that any of the arresting officers were employees or agents of either of the Municipal Defendants.

Arellano relies on *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*, 1171 (5th Cir. 1998) to contend he does not have to identify the officers by *name*, so long as he can identify the officers were employed by defendants. (ECF No. 157 at 2; *see also* Pl.'s Surreply, ECF No. 168 at 1–3, 5–8.) In *Davis*, the unidentified Mobil employee who gave the plaintiff an unsafe order wore a Mobil hard hat. *Davis*, 864 F.2d at 1174. Moreover, two additional witnesses corroborated Davis' claim that a Mobil company man issued the unsafe order. *Id*. The Fifth Circuit held Davis presented sufficient additional evidence for the district court to conclude the unidentified Mobil company man was in fact "an agent" of Mobil "for the purposes of making an admission" under Federal Rule of Evidence 801(d)(2)(D), therefore, his name was not necessary. *Id*. Here, unlike the plaintiff in *Davis*, Arellano has presented no additional evidence for this Court to reasonable conclude the officers who arrested Arellano were employed by Municipal Defendants. Arellano does not allege any identifying attire, badge or hat were worn or displayed by arresting agents. Nor does he provide any corroborating evidence like that present in *Davis*. As such, without more, Arellano's hearsay statements are

inadmissible.[10]

Moreover, Arellano's exhibits do not corroborate the conclusory allegations contained in his declaration. For example, Arellano makes a broad assumption that Municipal Defendants' officers were present during his arrest merely because their agencies belong to the San Diego Regional Fugitive Task Force. (Pl.'s Opp., ECF No. 157 at 8; Pl.'s Surreply, ECF No. 168 at 2, 7.) As evidence, Arellano refers to Exhibit B, which lists several law enforcement agencies as task force "[p]articipants" including San Diego Police and San Diego County Sheriff. (SAC, ECF No. 62 at 46.) However, there is nothing in this evidence to indicate members of the San Diego Police and San Diego County Sheriff Departments were present in Tijuana, Mexico on November 7, 2010, much less that they participated in Arellano's arrest or subsequent three-day detention in Mexico—facts that are material to his claim. Arellano's statements are therefore conclusory and unsupported by the record. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738–39 (9th Cir. 1979) (stating conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment).

Further, Arellano's reference to Exhibit A, DUSM Guerrero's USMS ROI is another example of inadequate evidence submitted in support of his contention that Municipal Defendant officers were present for, and participated in, his arrest in Mexico. (Pl.'s Opp., ECF No. 157 at 8–9.) Arellano asserts, based on information contained in the USMS ROI, that "although the Task Force didn't mention the San Diego [P]olice [D]epartment in their report, that [sic] doesn't mean [they were not] there. The Task Force could have decided not to mention SDPD [i]n their report just as . . . they didn't

---

[10] Plaintiff's alternative hearsay arguments under Federal Rules of Evidence 801(d)(2)(E) (defining statements made by a party's coconspirator during furtherance of a conspiracy) and 804(b)(3) (relating to hearsay exceptions for statements against interest) are also without merit and similarly **OVERRULED**. (*See* Pl.'s Opp. ECF 157 at 3–4; *see also* Pl.'s Surreply, ECF No. 168 at 7.)

mention names of the PEP officers." (*Id; see also* Pl.'s Surreply, ECF 168 at 7.) As discussed above, the USMS ROI shows only two agencies involved in Arellano's arrest, the U.S. Marshals Service and Mexican State Police (PEP). After his apprehension in Tijuana, Mexican authorities held Arellano in the custody of PEP and Mexican Immigration. (SAC, ECF 62 at 44–45.) Contrary to Arellano's assertions, the absence of Municipal Defendants' law enforcement agencies from the USMS ROI is not evidence that their police officers arrested Arellano in Mexico. Indeed, the failure to reference the agencies in the USMS ROI further supports Municipal Defendants' contentions that no officers from the City or County were present during Arellano's arrest. Arellano's assertions to the contrary are therefore speculative and unsupported by the record. *See Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact.")

Arellano's contentions that Municipal Defendants are liable for the conduct of Mexican authorities under the "color of state law" are similarly unsupported by evidence and without merit. (Pl.'s Opp., ECF No. 157 at 4, 7–8; Pl.'s Surreply, ECF No. 168 at 3.) A person acts under the color of law when he exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941) (internal quotation marks omitted)). Here, Arellano asserts Mexican authorities were working under Municipal Defendants' authority because they executed a warrant for Arellano's arrest, issued by a San Diego County Superior Court judge. (Pl.'s Opp., ECF No. 157 at 4; *see also* Pl.'s Surreply, ECF No. 168 at 3.) Arellano's argument, however, is foreclosed by this Court's previous order dismissing his § 1983 claims that Municipal Defendants were liable for his injuries due to the issuance

of a valid arrest warrant.[11] (Order, ECF No. 87 at 9, fn. 6.) As such, the Court need not consider Plaintiff's allegations stemming from the issuance and execution of the warrant.[12]

Arellano also makes the speculative assertion that Mexican authorities may or may not have "had a contract" with Municipal Defendants to locate and arrest him in Mexico, and as such, Municipal Defendants are liable either way. (Pl.'s Opp., ECF No. 157 at 7.) In support, Arellano cites to a string of cases where private entities were found to be acting under color of state law. (*Id.* at 7–8.) As discussed above, however, Arellano's only evidence in support of this contention are his own inadmissible hearsay statements, in which he concludes the officers were working under "Municipal Defendants'" authority (though he does not specify whether it was City or County or both). (*See id.* at 7–8.) Arellano has not pointed to any evidence in the record to establish Mexican authorities were contracted by Municipal Defendants to arrest him. *See* Fed. R. Civ. P. 56(c)(1)(A). Accordingly, the Court finds Arellano's evidence fails raise a genuine dispute as to facts material to his claim that Mexican authorities were acting under the color of state law when they caused his injuries in Mexico.[13] *See Loomis v. Cornish*, 836

---

[11] The Court "draw[s] on its judicial experience and common sense" to recognize that a warrant for failure to appear issues from a court, not a municipality. *See Iqbal*, 556 U.S. at 679.

[12] Accordingly, Defendant City's Exhibit 2—a copy of the warrant for Arellano's arrest issued by San Diego County Superior Court —is not material to the resolution of this Motion. (*See* City Exs., ECF No. 149-2, Ex. 2 at 5.)

[13] Arellano also objects to the City's admission of Exhibit 4, (City Exs., ECF No. 149-2, Ex. 4 at 8–12), an interrogatory request for admissions. (Pl.'s Opp. ECF. No. 157 at 1–2.) Arellano argues he never received the City's request for admissions and therefore did not respond. (*Id.*) The City moved to admit Exhibit 4 as evidence of Arellano's default admissions under Rule 36(a)(3). (*See* City P. & A., ECF No. 149-1 at 4.) Because the Court does not find Exhibit 4 necessary to its analysis in determining whether Municipal Defendants met their burden for summary judgment, Arellano's objection is **OVERRULED**. As such, the Court additionally **DENIES** as **MOOT** Arellano's request to re-open discovery. (Pl.'s Surreply, ECF No. 168 at 11–12.) *See* Fed. R. Civ. Proc. 36(b) ("[T]he court may permit withdrawal or amendment [of admissions] if it would promote the presentation of the merits of the action and if the court is

F.3d 991, 997 (9th Cir. 2016) ("'[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.'") (quoting *Nelson v. Pima Cmty. Coll*., 83 F.3d 1075, 1081 (9th Cir. 1996)) (brackets in original)).

### B. Custom, Policy and Failure to Train by Municipal Defendants

Likewise, Arellano has failed raise a genuine dispute as to whether his purported injuries were the result of some policy, custom or regulation of the Municipal Defendants, or by a failure to train. Arellano claims Municipal Defendants had policies or practices condoning abuse and torture against individuals apprehended in Mexico. (SAC, ECF No. 62 at 13–14.) Specifically, Arellano contends the officers who arrested him said "they can injure[] me, torture me, rob[] me, deprive me [sic] all Constitutional rights as long as in [sic] Mexico Territory. It was a custom ('habit, practice, routine, matter of course') for them to do this with all those who from the U.S. come to Mexico with a warrant and they find them." (*Id.* at 14.)

Arellano has not submitted sufficient probative, competent, or admissible evidence to rebut Municipal Defendants' showing and to overcome summary judgment. *See* Fed. R. Civ. P. 56(e)(2), (3). Arellano again relies solely on his own assertions in his declaration that the officers told him there was "no policy prohibiting them" from torturing individuals in Mexico. (Pl.'s Opp. ECF No. 157 at 5.) But Arellano cites to no particular portion of materials in the record to support his assertions. *See* Fed. R. Civ. P. 56(c)(1)(A). For example, Arellano asserts Municipal Defendants' Exhibits 1 and 7A, concerning their use of force policies, are evidence that Municipal Defendants do not have policies prohibiting their officers from using excessive force in Mexico. (*See id.* at 11.) This argument is contradicted by the record. As discussed above, Municipal Defendants' evidence establishes that they *do* have policies in place that prohibit their officers from using excessive force in Mexico, and Arellano has failed to offer evidence

---

persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.").

which contradicts this undisputed testimony. (*See* City Exs., ECF No. 149-2, Ex. 2 at 26–35; County Exs., ECF No. 148-3, Ex. 1 at 6–24.) Arellano's conclusory and speculative declarations to the contrary do not raise genuine dispute of material fact and are insufficient to defeat summary judgment. *See Thornhill*, 594 F.2d at 738–39; *see also* Fed. R. Civ. P. 56(e)(2).

Moreover, Arellano fails to present evidence to support his claim that the officers who arrested him allegedly engaged in widespread abuse and torture in Mexico did so under the authority, official or unofficial, of the Municipal Defendants. *See Thompson*, 885 F.2d at 1443–44 ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."). As discussed above, Lt. Amos attests the San Diego Sheriff's Department "does not have a policy or practice of encouraging or authorizing Mexican police to beat up or use unnecessary physical force on an arrestee in Mexico. If Mexican police did use unnecessary physical force on [Arellano], such conduct would be without Department authorization or approval." (Amos Decl., ECF No. 148-3 at 2, ¶ 5.) Similarly, Lt. Shaw and Sgt. Contreras state in their declarations that the San Diego Police Department "does not have a policy of authorizing its officers, or any agents working for or with the Department, to violate any individual's Constitutional rights when outside its jurisdiction, including in Mexico. (Shaw Decl., ECF No. 149-2 at 25, ¶ 13; *see also* Contreras Decl., ECF No. 149-2 at 21. ¶ 10.)

In response, Arellano fails to present any competent or admissible evidence of inadequate training. Arellano instead makes the unsubstantiated claim that Municipal Defendants' training policies only apply to the United States and not while officers are inside Mexico. (Opp., ECF No. 157 at 8, 11.) This assertion, however, is not supported by the evidence. As discussed above, Municipal Defendants have provided declarations stating their use of force policy governs all officers' conduct, in all jurisdictions, including Mexico. (*See* Amos Decl., ECF No. 148-3 at 2, ¶¶ 4; *see also* Contreras Decl., ECF No. 149-2 at 21, ¶¶ 8–9, Shaw Decl., ECF No. 149-2 at 24–25, ¶¶ 6–7, 12–13.)

1    Moreover, Municipal Defendants' declarations state that any use of unnecessary or

2    excessive force against an arrestee is not tolerated or condoned, even if the conduct

3    occurred in Mexico. (*See* Amos Decl., ECF No. 148-3 at 2, ¶ 5; Contreras Decl., ECF

4    No. 149-2 at 21, ¶ 10; Shaw Decl. ECF No. 149-2 at 24 ¶ 12.)

5         Arellano's only proffered evidence are in the form of inadmissible hearsay

6    statements, contained in his declaration. (*See* Pl.'s Opp. ECF No. 157 at 8.) For instance,

7    he states: "They do this torture to all fugitives from U.S. [sic] who they have to go a [sic]

8    look for in Mexico. And that their employer knows but they are told as long as it occurs

9    in the territory outside the U.S. its ok." (*Id*.) Arellano has provided no admissible

10   evidence to support his claim that Municipal Defendants' training policies are inadequate.

11   Arellano has not pointed this Court to any policy, officially adopted and promulgated by

12   the City or County which permits outside or foreign agents to use excessive force when

13   apprehending individuals in Mexico. Nor has he established a practice, so permanent and

14   well-settled as to constitute a custom, that existed and through which foreign agents were

15   acting at the behest of employees of Municipal Defendants. *See Praprotnik*, 485 U.S. at

16   121. And lastly, Arellano has failed to identify any inadequacy in the training on the part

17   of Municipal Defendants, and thus he has not shown deliberate indifference. *City of*

18   *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985); *See also, e.g., Waggy v. Spokane*

19   *County Washington*, 594 F.3d 707, 714 (9th Cir. 2010) (holding that district court

20   properly granted summary judgment in favor of county defendant because plaintiff failed

21   to present evidence "indicating either what training practices were employed by the

22   county at the time of the alleged constitutional violation, or what type of constitutionally-

23   mandated training was lacking"). In short, Arellano has failed to rebut the evidence

24   proffered by Municipal Defendants in support of summary judgment under both his

25   municipal policy and custom theory and his failure to train theory.

26        Having reviewed the evidence presented, the Court finds no genuine dispute of

27   material fact regarding Arellano's claims under § 1983, that he suffered constitutional

28   harm at the hands of officers or agents employed by Municipal Defendants. Even viewed

1    in light of most favorable to Arellano, the non-moving party, no triable issue of fact

2    exists to show Municipal Defendants' law enforcement agencies had any involvement

3    with, or caused, Arellano's injuries during his arrest and detention in Mexico. Given this

4    total lack of support,[14] the Court **GRANTS** Municipal Defendants' motions for summary

5    judgment on Arellano's § 1983 claims that he suffered constitutional harm.

6    **VII.   PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

7            On August 27, 2019, Plaintiff filed a motion for default judgment against (1)

8    Guerrero Bail Bonds; (2) Officer Guerrero; (3) San Diego Violent Crimes Task Force; (4)

9    Jesus Guerrero; (5) P. Beal; (6) U.S. Marshall's Office. (ECF No. 145.) The Court denied

10   this motion on February 28, 2020 due to Plaintiff's failure to first request that the clerk

11   enter default. (ECF No. 175 at 2.) On June 5, 2020, Plaintiff filed a Motion to Reconsider

12   which is currently pending before the Court. (ECF No. 180).  A motion for

13   reconsideration is appropriate if the district court (1) is presented with newly discovered

14   evidence; (2) commits clear error or its initial decision was manifestly unjust; or (3) if

15   there is an intervening change in controlling law.  *Sch. Dist. No. 1J, Multnomah County,*

16   *Or. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993).  Plaintiff has not shown that any

17   of the aforementioned factors are satisfied here.  Accordingly, Plaintiff's motion is

18   **DENIED**.

19          However, this case has been pending before the Court since October 8, 2014 and

20

―――――――――――――――

21
22   [14] Finally, Arellano argues that, as prisoner proceeding pro se, he has been unable to conduct a
     sufficient investigation, stating he has "previously requested the assistance of counsel or
23   investigator" to help him investigate the identities of the undercover officers who arrested him.
     (Pl.'s Opp., ECF 157 at 3; Pl.'s Surreply, ECF 168 at 6.) While Courts must liberally construe
24   documents filed by pro se litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam),
     as this Court has explained to Plaintiff several times, he is not entitled to appointed counsel in a
25   civil matter. Indeed, during the court of these proceedings, Arellano has filed numerous motions
     for appointment of counsel (*see* ECF Nos. 7, 18, 119, 125, 131, 134, 139, 147, 161) which the
26   Court has denied (*see* ECF Nos. 8, 24, 123, 132, 141, 152, 169). Arellano is a seasoned and
     diligent pro se litigant and has had more than ample time to engage in discovery, uncover the
27   facts and to gather evidence in support of his claims.

28

1    was transferred to the Honorable Gonzalo P. Curiel on February 3, 2020. 28 U.S.C. §

2    1915(e)(2) provides that "the court shall dismiss the case at any time if the court

3    determines that . . . the action or appeal—(i) is frivolous or malicious; [or] (ii) fails to

4    state a claim on which relief may be granted" (emphasis added)).  Accordingly, the Court

5    considers the sufficiency of Plaintiff's claims against each Defendant below.

6       **A.    Guerrero Bail Bonds ("GBB") and Henry L. Guerrero ("Guerrero")**

7           Plaintiff's SAC fails to state a claim against GBB and Guerrero and is therefore

8    subject to *sua sponte* dismissal.  Here, Plaintiff claims GBB and Guerrero filed numerous

9    motions in Superior Court for extension of time from January 4, 2010 until June 2010

10   describing "numerous ways and attempts" taken to locate Plaintiff after he failed to

11   appear in San Diego Superior Court. (*See* SAC at 18, 22.) GBB and Guerrero "got

12   involved in re-capturing" Plaintiff by allegedly "contact[ing] the FTF" (or SDRFTF) after

13   he absconded, and a warrant issued for his arrest.  *See* SAC at 2, 18, 22.  However,

14   Plaintiff's SAC contains insufficient allegations to plausibly show GBB and Geurrero

15   acted "under color of state law" when the allegedly wrongful conduct occurred.  *See*

16   *Ouzts v. Maryland Nat. Ins. Co*., 505 F.2d 547, 555 (9th Cir. 1974) ("the bondsman was

17   acting to protect his own private financial interest and not to vindicate the interest of the

18   state"); *Paige v. Cuevas*, No. 2:14–cv–2773 GEB DAD PS, 2015 WL 2091684, at *2–3

19   (E.D. Cal. May 4, 2015) (recommending dismissal of Section 1983 complaint against bail

20   bondsman for lack of subject matter jurisdiction); *Dixon v. Wesbrook*, No. 1:11–CV–

21   1290 AWI JLT, 2012 WL 6160797, at *6 (E.D. Cal. Dec.11, 2012) ("The Ninth Circuit

22   has found that bounty hunters and bail bond agents are not state actors acting under color

23   of state law for purposes of Section 1983*.")*.  *Accord United States v. Poe*, 556 F.3d

24   1113, 1124 (10th Cir. 2009) ("Because the bounty hunters did not intend to assist law

25   enforcement, they are not state actors"); *Erwin v. Byrd's Bail Bonding*, C/A No. 2:10–

26   1948–CWH–RSC, 2010 WL 3463881, at *2 (D.S.C. Aug. 5, 2010) ("It is well-settled

27   that bail bonding companies and bail bondsmen do not act under color of state law.");

28

*Leverton v. Garner*, No. Civ. A. G–05–295, 2006 WL 1350243, at *2 (S.D. Tex. May 15, 2006) ("Bondsmen are private citizens who do not act 'under color of state law' ").

Since Plaintiff cannot state a Section 1983 claim against either GBB or Guerrero, both Defendants are  dismissed from the case.  *See, e.g., Briscoe v. Madrid*, No. 1:17-CV-0716-DAD-SKO, 2018 WL 573376, at *3 (E.D. Cal. Jan. 26, 2018) (pursuant to the screening requirement under 28 U.S.C. § 1915A(a) the court screened the complaint and found that Plaintiff could not state a Section 1983 claim against the defendant).[15]

**B.   San Diego Regional Fugitive Task Force (SDRFTF) aka Violent Crimes Task Force [ECF Nos. 9, 38] & U.S. Marshal's Office (USMO) [ECF No. 33].**

Neither the SDRFTF or the USMO are "persons" subject to suit under § 1983. A department, agency or unit of a local government is not a "person" under § 1983. *See Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995) (police narcotics task force not a "person" or entity subject to suit under section 1983); *see also Thomas v. Santa Barbara Sheriff's Office*, No. 2:19-04906 DOC (ADS), 2019 WL 6736913, at *2 (C.D. Cal. July 18, 2019). Therefore, even if service were proper, Plaintiff's claims as to the SDRFTF and the USMO fail to state a claim upon which relief can be granted and are therefore subject to *sua sponte* dismissal. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Section 1983 provides

---

[15] Further, Plaintiff has not shown that he has properly effectuated service as to both Defendants since he has not shown that "Dominick Zizzo, Bail Bondsman"—who is listed as the "individual served" for Guerrero Bail Bonds and for Officer Henry L. Guerrero (ECF No. 145 at 5-6)—is an "agent authorized by appointment or by law to receive service of process" on behalf of either Henry L. Guerrero or Guerrero Bail Bonds.  *See* FRCP4(e)(C); Fed. R. Civ. P. 4(e)(1) (permitting service to be effectuated under either the law of the state in which the district court is located or the law of the state where service is made).  California law provides that service of a corporation may be effectuated by serving either the "person designated as agent for service of process" or "the president, chief executive officer, or other head of the corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager, or a person authorized by the corporation to receive service of process." Cal. Civ. P. Code § 416.10; *Reddy v. Mediscribes, Inc.*, No. EDCV191677JGBSPX, 2020 WL 2220203, at *3 (C.D. Cal. Feb. 4, 2020).

a cause of action against any "person" who, under color of law, deprives an individual of federal constitutional rights or limited federal statutory rights. 42 U.S.C. § 1983.[16]

To the extent Plaintiff seeks to sue either the SDRFTF or the USMO pursuant to *Bivens* or the FTCA (*see* SAC at 3), he also fails to state a claim. In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corp. v. Malesko*, 534 U.S. 61. 66 (2001). However, a *Bivens* claim may only be maintained against officials acting under color of *federal law in their individual capacities*; neither the United States, nor its agencies, are proper defendants under *Bivens*. *See FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (federal agencies are not proper defendants in a *Bivens* action); *Myers v. United States Marshals Serv.*, No. CV10–2662, 2011 WL 671998, at *2 (S.D. Cal. Feb. 15, 2011).

### C.     P. Beal, Jesus "Jessie" Guerrero, & United States

Federal Rules of Civil Procedure ("Rule") 4(i) provides that in order to properly effectuate service on the United States, a party must:

> (A)(i) deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or

> (ii) send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

> (B) send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

> (C) if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

---

[16] The Court notes that both SDRFTF and USMO were served with the FAC when "Greg Doss, ACSDUSM" accepted service on their behalf on April 6, 2016. *See* ECF Nos. 33, 38. Neither SDRFTF or the USMO has appeared or filed any responsive pleading. However, since the Court dismisses SDRFTF and USMO based on the insufficiency of Plaintiff's claims, the question of whether default is warranted against SDRFTF and USMO is rendered moot.

Fed. R. Civ. P. 4(i)(1).  Further, in order to "serve a United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)."  Fed. R. Civ. P. 4(i)(3).

Plaintiff has failed to properly serve P. Beal, Jesus "Jessie" Guerrero, and the United States, and accordingly, entering default is not proper as to any of these Defendants.  While Plaintiff has personally served both Beal and Jesus "Jessie" Guerrero (ECF Nos. 34, 39), who are U.S. Deputy Marshals alleged to have acted as part of the SDRFTF and in conjunction with both County and Mexican officials to effect Plaintiff's arrest in Tijuana on November 7, 2010, *see* SAC at 7, 10, 18, 44, he has not also served the United States, as is clearly required by Fed. R. Civ. P. 4(i)(1) and Fed. R. Civ. P. 4(i)(3).  Plaintiff named the United States as a Defendant in both his FAC and his SAC. *See* ECF No. 27 at 3; ECF No. 62 at 3; ECF No. 28 at 1 (Summons on FAC), all listing United States as a Defendant.  Therefore, Plaintiff is ordered to show cause why P. Beal, Jesus "Jessie" Guerrero, & United States of America should not be dismissed pursuant to Rule 4(m).[17]

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[17] In terms of other Defendants, Plaintiff's prior attempt to serve the Task Force at "S.D. County Probation Dept." was returned unexecuted, *see* ECF No. 9, and the City of El Cajon was dismissed with prejudice on December 28, 2016.  ECF No. 58.

## VIII.  CONCLUSION AND ORDER

Thus, for the reasons set forth above, **IT IS HEREBY ORDERED** that Municipal Defendants City of San Diego and County of San Diego Motions for Summary Judgment are **GRANTED** (ECF Nos. 148, 149).

Further, Defendants Guerrero Bail Bonds, Officer Guerrero, the San Diego Violent Crimes Task Force, and the U.S. Marshall's Office are **DISMISSED** from this action. Plaintiff is **ORDERED TO SHOW CAUSE** as to why Jesus Guerrero, P. Beal, and the United States should not be dismissed from this case.

**IT IS SO ORDERED**.

Dated:  August 21, 2020

Hon. Gonzalo P. Curiel
United States District Judge

3:14-cv-2404-GPC-KSC