1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11    RAUL ARELLANO, JR.,                    Case No.:  3:14-cv-02404-JO-KSC

12                              Plaintiff,
                                            **ORDER GRANTING DEFENDANTS'**
13    v.                                     **MOTION TO DISMISS**

14    COUNTY OF SAN DIEGO et al.,

15                             Defendants.

16

17          Plaintiff Raul Arellano, Jr. is a state prisoner incarcerated at Richard J. Donovan

18    Correctional Facility.  Proceeding *pro se* and *in forma pauperis* (IFP), he filed a second

19    amended civil rights complaint alleging that federal marshals violated his constitutional

20    rights when they arrested him in Mexico. *See* Dkt. 62 ("SAC").  Defendant United States

21    filed a motion to dismiss the SAC.  Dkt. 209.  Because Plaintiff is proceeding IFP, the

22    Court also screens his amended complaint pursuant to 28 U.S.C. § 1915 in addition to

23    addressing the United States' motion to dismiss.  For the reasons explained below, the

24    Court grants the motion to dismiss and also dismisses the remaining claims in this case.

25    ///

26    ///

27    ///

28    ///

1

**I. BACKGROUND**

Plaintiff's suit centers on his allegations that federal marshals used excessive force when they arrested him in Mexico pursuant to a warrant.  On January 4, 2010, the San Diego County Superior Court in El Cajon issued a warrant for Plaintiff's arrest after he failed to appear for a court hearing.  Dkt. 62 ("SAC") at 8.  U.S. Marshal P. Beal organized an operation to capture Plaintiff while he was in Mexico.  *Id.* at 13.  On November 7, 2010, U.S. Marshal Jesus Guerrero and Mexican state agents from the Policia Estatal Preventiva ("PEP") located and arrested Plaintiff inside a hotel lobby in Tijuana, Mexico.  Dkt. 62 ("Arrest Report") at 1.  Plaintiff resisted arrest but was eventually taken into custody.  *Id.*

Plaintiff alleges that officials threatened and attacked him both during and after his arrest.  Marshal Guerrero kicked a handcuffed Plaintiff in the ribs and told him "[this] is Mexico and [I] can do what [I] want because no policy prevents [me from doing so]."  SAC at 8.  Guerrero further threatened Plaintiff by informing him that the Mexican agents are "going to make sure you understand why [you are] better off not saying [anything] when you get transferred to San Diego County Jail."  *Id.* at 8–9.  After Plaintiff's arrest, the Mexican PEP agents escorted Plaintiff into a vehicle where they tortured him for two hours.  *Id.* at 9.  When Plaintiff arrived at an immigration facility in Mexicali, PEP agents continued to torture him.  *Id.* at 9–10; Arrest Report at 1.  On November 10, 2010, PEP agents deported Plaintiff to the United States where Guerrero transported Plaintiff to the San Diego County Central Jail ("Central Jail").  SAC at 11; Arrest Report at 2.

Based on the above facts, Plaintiff filed suit against (1) the County of San Diego; (2) the City of San Diego; (3) the City of El Cajon; (4) Guerrero Bail Bonds; (5) bondsman Henry L. Guerrero; (6) the San Diego Regional Fugitive Task Force; (7) the United States Marshal's Office; (8) U.S. Marshal Jesus Guerrero; (9) U.S. Marshal P. Beal; and (10) the United States for violating his constitutional rights during his arrest and detention in

2

Mexico. After a series of Court orders,[1] the only defendants currently remaining in this action are U.S. Marshals Guerrero and Beal and the United States. *See* Dkts. 58, 87, 181. Against Guerrero, Plaintiff alleges claims for violation of 42 U.S.C. §§ 1985(3) and 1986; and a *Bivens* claim for use of excessive force in violation of the Fourth Amendment. Against Beal, Plaintiff alleges a claim for violation of 42 U.S.C. § 1983. Against the United States, Plaintiff alleges various tort claims of (1) negligence; (2) assault; (3) battery; (4) false imprisonment; and (5) intentional infliction of emotional distress.

Defendant United States filed a motion to dismiss for lack of jurisdiction because Plaintiff failed to exhaust his tort claims against the government. It argues Plaintiff did not present these tort claims against the United States to the appropriate federal agency prior to filing this suit. SAC at 3; Dkt. 209-1 ("Kim Decl.") at ¶¶ 3–6.

## II.  LEGAL STANDARD

A party may challenge a complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. "Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action for lack of subject matter jurisdiction by asserting a facial challenge or a factual challenge. Fed. R. Civ. P. 12(b)(1); *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). In a facial challenge, the court limits its inquiry to the allegations set forth in the complaint and considers the complaint's allegations to be true and draws all reasonable inferences in the plaintiff's favor. *Safe Air for Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004); *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009). Where the moving party asserts a factual challenge, based on the legal sufficiency of the jurisdictional facts, the court may review any evidence necessary,

---

[1] The case was originally filed on October 8, 2014 and assigned to District Court Judge Janis L. Sammartino and transferred to District Court Judge Gonzalo P. Curiel on February 3, 2020 and subsequently transferred to the undersigned on January 5, 2022.

1   such as affidavits and testimony, in order to determine whether subject matter jurisdiction

2   exists. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The plaintiff has the

3   burden of showing that the court has subject matter jurisdiction over the action. *Ass'n of*

4   *Am. Med. Colleges v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

5       Also, because Plaintiff was granted leave to proceed IFP, his second amended

6   complaint must undergo a *sua sponte* screening for dismissal. Pursuant to 28 U.S.C. §

7   1915(e)(2)(B), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it

8   to the extent it is frivolous, malicious, fails to state a claim upon which relief may be

9   granted, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d

10  1122, 1126–27 (9th Cir. 2000) (*en banc*); *see also Rhodes v. Robinson*, 621 F.3d 1002,

11  1004 (9th Cir. 2010) (same with respect to 28 U.S.C. § 1915A(a) & (b)(1)). "The standard

12  for determining whether a plaintiff has failed to state a claim upon which relief can be

13  granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure

14  12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th

15  Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) ("Failure to

16  state a claim under § 1915A incorporates the familiar standard applied in the context of

17  failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6)

18  requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that

19  is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

20  marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content

21  that allows the court to draw the reasonable inference that the defendant is liable for the

22  misconduct alleged." *Id.* While detailed factual allegations are not required, "[t]hreadbare

23  recitals of the elements of a cause of action, supported by mere conclusory statements, do

24  not suffice" to state a claim. *Id.* at 678.

25                          **III. DISCUSSION**

26      The Court first examines Defendant United States' motion to dismiss on grounds

27  that Plaintiff failed to exhaust his tort claims against the government. Next, the Court will

28

4

1  screen Plaintiff's remaining *Bivens*, §§ 1983, 1985(3), and 1986 claims against Defendants

2  Beal and Guerreo to determine whether they state a legally valid claim for relief.

3  **A. Exhaustion of Tort Claims Against the United States**

4       Defendant United States argues that Plaintiff's tort claims against it are barred

5  because he failed to properly exhaust them prior to filing suit.   The Federal Tort Claims

6  Act ("FTCA") is the exclusive remedy for tortious conduct by the United States and its

7  employees.  *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); *see also Kennedy v. U.S.*

8  *Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998).  The FTCA waives the United States'

9  traditional sovereign immunity to allow suit for torts committed by its employees.  28

10  U.S.C. §§ 1346(b), 2674.  Before a plaintiff can file a claim against the United States under

11  the FTCA in federal court, the plaintiff must first present the claim to the appropriate

12  federal agency and be denied by the agency.  28 U.S.C. § 2675(a).  A tort claim against the

13  United States is barred unless it is presented in writing to the appropriate federal agency

14  within two years after the claim accrues.  28 U.S.C. § 2401(b).  The FTCA's exhaustion

15  requirement is "jurisdictional in nature"; thus, a federal district court cannot adjudicate

16  FTCA claims until the final denial of plaintiff's administrative remedies by the appropriate

17  federal agency.  *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006); *McNeil*

18  *v. United States*, 508 U.S. 106, 111 (1993).

19       Here, the Court finds that Plaintiff has not met his exhaustion requirements under

20  the FTCA because he failed to present his tort claims to the appropriate agency prior to

21  filing suit.  In his second amended complaint, Plaintiff appears to assert that he exhausted

22  his claims with respect to marshals Beal and Guerrero: in response to the question "Have

23  you previously sought and exhausted all forms of available relief from the proper

24  administrative officials?" on the form complaint, he responds, "I don't need to file; except

25  for the one for U.S. marshals which I have." SAC at 3.  He does not, however, identify the

26  agency to which he submitted his claims.  *Id.*  Nor does he inform the Court when he filed

27  these claims with a federal agency and when the agency denied these claims.  *See also*

28  *Harris v. United States*, 2019 WL 7834813, at *7–8 (C.D. Cal. Nov. 1, 2019), *report and*

1   *recommendation adopted*, 2020 WL 402126 (C.D. Cal. Jan. 24, 2020) (explaining that

2   vague and unsubstantiated claims of exhaustion are insufficient).  He also fails to provide

3   any documentation showing that he filed an administrative complaint pertaining to his state

4   law claims.  *Ahlin v. Soc. Sec. Off.*, 2007 WL 1302427, at *3 (E.D. Cal. May 3, 2007)

5   (dismissing complaint when plaintiff fails to show that she filed an administrative

6   complaint pursuant to the FTCA).  Countering Plaintiff's unsubstantiated claim of

7   exhaustion, Defendant United States submitted a declaration from the U.S. Marshals

8   Service stating that the agency conducted a search of its database and did not find any

9   administrative claims filed by Plaintiff.  Kim Decl. at ¶¶ 3–6; *see, e.g.*, *Plante v. United*

10  *States*, 2009 WL 2045692, at *2 (S.D. Cal. July 8, 2009) (considering declaration from

11  Department of Health and Human Services on a 12(b)(1) motion to dismiss to determine if

12  plaintiff complied with the FTCA exhaustion requirement); *Alvarez v. United States*, 2017

13  WL 3723926, at *2 (S.D. Cal. Jan. 17, 2017) (same).  Based on the above, the Court finds

14  that Plaintiff has not met his burden of establishing that he has exhausted his tort claims

15  prior to filing suit.  *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980).  The Court,

16  therefore, GRANTS the United States' motion to dismiss Plaintiff's tort claims against it—

17  his claims for negligence, assault, battery, false imprisonment, and intentional infliction of

18  emotional distress—for lack of jurisdiction.

19      The Court dismisses these claims with prejudice because further amendment would

20  be futile.  The Court finds that Plaintiff has failed to exhaust his claims to date, and Plaintiff

21  could not now seek to exhaust his claims because the deadline for presenting these claims

22  to the appropriate agency—two years after their occurrence—has passed.  *See, e.g.*, *Tsu v.*

23  *Tracy Fed. Bank*, 1998 WL 118190, at *1 (N.D. Cal. Feb. 27, 1998), *aff'd*, 172 F.3d 59

24  (9th Cir. 1999) (dismissing with prejudice FTCA claims when plaintiff failed to file an

25  administrative claim within the two-year limitations period); *Greene v. Segal*, 2008 WL

26  11336820, at *3 (C.D. Cal. June 12, 2008) (same).

27  **B. § 1983 Claim**

28

6

1    The Court now turns to screening the remainder of Plaintiff's complaint pursuant to

2    28 U.S.C. § 1915, starting with his § 1983 claim against federal officer Beal.  To state a

3    claim for relief under § 1983, a plaintiff must plead that the defendant (1) acted under color

4    of state law and (2) deprived him of a right secured by the Constitution.  *Johnson v.*

5    *Knowles*, 113 F.3d 1114, 1117 (9th Cir. 1997).  A person acts under color of state law if

6    the person "exercise[s] power possessed by virtue of state law and made possible only

7    because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S.

8    42, 49 (1988) (quotations omitted).  Because federal agents act pursuant to federal law, not

9    state law, § 1983 precludes liability for federal agents.  *Morse v. N. Coast Opportunities,*

10   *Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997).  Here, Plaintiff fails to state a § 1983 claim

11   against Beal because the statute does not authorize a cause of action against federal agents.

12   *See id.*  ("[Plaintiff's] complaint is invalid on its face in its reliance upon § 1983 as a cause

13   of action against alleged federal government actors.").  Accordingly, the Court dismisses

14   Plaintiff's § 1983 claim with prejudice.  *Id.*  Further amendment would be futile because §

15   1983 precludes liability for federal government actors; any such claims against these

16   federal actors are invalid on their face.  *Id.*

17   **C. *Bivens* Claim**

18   In screening Plaintiff's complaint, the Court next turns to examining whether

19   Plaintiff alleged a legally cognizable *Bivens* claim.  A plaintiff may bring constitutional

20   violation claims against federal actors pursuant to *Bivens v. Six Unknown Named Agents*

21   *of the Fed. Bur. of Narcotics*, 403 U.S. 388 (1971).  Such claims are considered the "federal

22   analogue" to § 1983 claims against state actors.  *Hartman v. Moore*, 547 U.S. 250, 254,

23   255 n.2 (2006).  In *Bivens*, the Supreme Court inferred a cause of action for damages

24   against agents from the Federal Bureau of Narcotics for an unreasonable search and seizure

25   in violation of the Fourth Amendment even though no federal statute authorized such a

26   claim.  *Bivens*, 403 U.S. at 395–97.  Since then, the Supreme Court has recognized an

27   implied cause of action under the Constitution ("*Bivens* claim") in two other contexts: (1)

28   a Fifth Amendment due process claim by a former congressional staffer for sex

1  discrimination; and (2) an Eighth Amendment claim for cruel and unusual punishment

2  against federal jailers for failing to treat a prisoner's severe asthma.  *Davis v. Passman*, 442

3  U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980).  These three cases—*Bivens*, *Davis*,

4  and *Carlson*—are the only cases in which the Supreme Court has approved of an implied

5  damages remedy under the Constitution.  *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).

6  Outside of these three Supreme Court-approved contexts, courts must go through the

7  following two steps before allowing a plaintiff to proceed with a cause of action under

8  *Bivens*:  (1) determine whether the case presents a "new *Bivens* context" different from the

9  three cases in which the Supreme Court implied a damages action; and (2) if the case

10  presents a new *Bivens* context, ask if there are "special factors" indicating that the judiciary

11  may be less equipped than Congress to "weigh the costs and benefits of allowing a damages

12  action to proceed."  *Pettibone v. Russell*, 59 F.4th 449, 454–55 (9th Cir. 2023) (*citing*

13  *Egbert v. Boule*, 142 S. Ct. 1793, 1803 (2022)).  If the case presents a new *Bivens* context

14  and the court finds at least one "special factor," the court cannot infer a private right of

15  action.  *Pettibone*, 59 F.4th at 455.  The Court addresses each step below.

16  ### 1.  A New Bivens Context

17  The Court first examines whether Plaintiff's claims that federal officers used

18  excessive force against him present a "new *Bivens* context."  A context is "new" when it is

19  meaningfully different from the three cases—*Bivens*, *Davis*, and *Carlson*—in which the

20  Supreme Court has implied a damages action.  *Egbert*, 142 S. Ct. at 1803.  The Supreme

21  Court has provided a non-exhaustive list of differences that are "meaningful enough" to

22  make a new *Bivens* context:

23  The rank of the officers involved; the constitutional right at issue; the generality or

24  specificity of the official action; the extent of judicial guidance as to how an officer

25  should respond to the problem or emergency to be confronted; the statutory or other

26  legal mandate under which the officer was operating; the risk of disruptive intrusion

27  by the Judiciary into the functioning of other branches.

28

1    *Ziglar*, 582 U.S. at 140.  For example, in *Hernandez v. Mesa*, a border patrol agent shot

2    and killed a 15-year-old Mexican national because the agent believed the youth was

3    attempting an illegal border crossing into the United States.  140 S. Ct. 735, 740 (2020).

4    The parents subsequently sued the border patrol agent alleging excessive use of force in

5    violation of the Fourth Amendment.  *Id.*  In this case, the Supreme Court analyzed the

6    differences in the specific constitutional rights at issue, excessive use of force compared to

7    an unreasonable search and seizure in *Bivens*, and the nature of the misconduct by the

8    federal agents, a shooting compared to a warrantless search in *Bivens*.  *Id.* at 743–44.

9    Ultimately, the Supreme Court concluded that an excessive-force shooting by a border

10   patrol officer presented a meaningfully different context than the *Bivens* scenario of a

11   warrantless search into an apartment.  *Id.*

12         Under this reasoning, Plaintiff's claims presented here also present a "new" *Bivens*

13   context because, like the *Hernandez* case, they involve a cross-border use of excessive

14   force by federal officers.  Although both cases implicate the Fourth Amendment, the

15   specific constitutional right at issue is excessive use of force, not an unreasonable search

16   and seizure.  *See id.* at 743 ("A claim may arise in a new context even if it is based on the

17   same constitutional provision as a claim in a case in which a damages remedy was

18   previously recognized.").  The nature of the misconduct involves an excessive use of force

19   when agents arrested Plaintiff in Mexico pursuant to a search warrant as opposed to a

20   warrantless search into an apartment in the United States.  *Bivens*, 403 U.S. at 388–89.

21   Accordingly, the Court finds that the case presents a new *Bivens* context.

22         ***2. Special Factors***

23         Given that Plaintiff's claims involve a "new" *Bivens* context, the Court must inquire

24   as to whether there are any "special factors" counseling against extending a *Bivens* claim.

25   In *Egbert v. Boule*, the Supreme Court provided specific instructions to limit further

26   expansion of *Bivens* claims:  courts are mandated to examine if there is "any reason to think

27   that Congress might be better equipped to create a damages remedy" than the judiciary.

28   142 S. Ct. at 1803.  If the answer is yes, then courts cannot recognize a *Bivens* cause of

1    action.  *See id.* at 1805 (holding that if there is "*any* rational reason (even one) to think that

2    Congress is better suited to weigh the costs and benefits of allowing a damages claim," the

3    court cannot recognize a *Bivens* claim) (emphasis in original) (internal quotations omitted);

4    *see also Mejia v. Miller*, 61 F.4th 663, 667 (9th Cir. 2023) ("The question is no longer

5    whether the Judiciary is well suited, but whether Congress is better suited.").  Under

6    *Egbert*, "rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even

7    modestly."  *Id.* at 669; *see Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023) ("[After

8    *Egbert*], future extensions of *Bivens* are dead on arrival.").  Some of the special factors that

9    weigh against judicial expansion of *Bivens* claims include the availability of alternate forms

10   of relief, foreign relations, and national security concerns.  *Hernandez*, 140 S. Ct. at 744–

11   46; *Egbert*, 142 S. Ct. at 1806.

12        Here, the fact that Plaintiff had alternate forms of relief available to him outside a

13   *Bivens* claim counsels against extending a *Bivens* cause of action.  *Egbert*, 142 S. Ct. at

14   1804.  In *Egbert*, an inn owner assaulted by a border patrol agent brought suit under *Bivens*

15   in addition to filing an internal grievance complaint with the border patrol agent's

16   supervisor and an administrative claim under the FTCA.  *Id.* at 1802.  The Supreme Court

17   held that the availability of alternative remedies through the complaint with the agent's

18   supervisor and the FTCA foreclosed a *Bivens* cause of action.  *Id.* at 1806; *see also Corr.*

19   *Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (noting that the availability of

20   administrative remedies counsels against affording a *Bivens* cause of action); *Mejia*, 61

21   F.4th at 669 (dismissing *Bivens* action based on use of excessive force by a federal agent

22   when alternative administrative remedies were available); *Yassein v. Henderson*, 2023 WL

23   2669880, at *5 (S.D. Cal. Mar. 13, 2023) (dismissing *Bivens* action based on use of

24   excessive force by federal agents when the FTCA provided an alternate administrative

25   remedy).  Like in *Egbert*, Plaintiff could have filed an internal grievance complaint with

26   the U.S. Marshals Service and an FTCA claim.  *See Challenger v. Bassolino*, 2023 WL

27   4287204, at *9–10 (D.N.J. June 30, 2023) (dismissing *Bivens* claim because plaintiff could

28   have filed internal grievance complaint with the U.S. Marshals Service and FTCA remedies

1  were available); *Clutts v. Lester*, 2023 WL 3901489, at \*6 (N.D. Iowa June 8, 2023)

2  (dismissing *Bivens* claim because plaintiff could file internal grievance complaint with the

3  U.S. Marshals Service).  Accordingly, because Plaintiff's claims present a new *Bivens*

4  context and special factors counsel against the extension of a *Bivens* cause of action, the

5  Court cannot infer a constitutional cause of action and remedy for his claims.  The Court

6  therefore dismisses Plaintiff's *Bivens* claim with prejudice as further amendment would be

7  futile to address the fact that a *Biven* claim cannot lie in this scenario.

8  **D. §§ 1985(3) and 1986 Claims**

9      The Court next considers whether Plaintiff sufficiently states violations of 42 U.S.C.

10  §§ 1985(3) and 1986 against U.S. Marshal Guerrero.  42 U.S.C. § 1985(3) prohibits

11  conspiracies to deprive persons of their civil rights.  To bring a cause of action under §

12  1985(3), a plaintiff must allege and prove the following four elements: (1) a conspiracy;

13  (2) for the purpose of depriving, either directly or indirectly, any person or class of persons

14  of the equal protection of the laws, or of equal privileges and immunities under the laws;

15  and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his

16  person or property or deprived of any right or privilege of a citizen of the United States.

17  *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825,

18  828–29 (1983).  For the second prong, a plaintiff must allege a deprivation of a legally

19  protected right motivated by "some racial, or perhaps otherwise class-based, invidiously

20  discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  Thus, plaintiff

21  must allege the existence of a conspiracy motivated by racial bias to state a § 1985(3) claim.

22  *See Gibson v. United States*, 781 F.2d 1334, 1341 (9th Cir. 1986) ("The Supreme Court . .

23  . explicitly restricted the statutory coverage [of § 1985(3)] to conspiracies motivated by

24  racial bias.").  42 U.S.C. § 1986 similarly imposes liability on persons who knew of an

25  impending § 1985 violation but neglected or refused to prevent the violation.  *Karim-*

26  *Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988).  A plaintiff can

27  maintain a § 1986 action only if the complaint states a valid § 1985 claim.  *Trerice v.*

28  *Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985).

1    Here, Plaintiff fails to state either a §§ 1985(3) or a 1986 claim because he does not

2  allege that Guerrero conspired to deprive him of his constitutional rights because of his

3  race. *See Nemcik v. Stevens*, 2017 WL 2834120, at *6 (N.D. Cal. June 30, 2017)

4  (dismissing § 1985(3) claim where plaintiff did not allege the existence of racial animus);

5  *Hoxey v. Cnty. of Los Angeles*, 2009 WL 10655206, at *2 (C.D. Cal. June 22, 2009) (same).

6  Because Plaintiff fails to state a § 1985(3) claim, he also fails to state a § 1986 claim. *See*

7  *Trerice*, 769 F.2d at 1403 (finding no cause of action under § 1986 without a valid § 1985

8  claim). Accordingly, the Court dismisses Plaintiff's §§ 1985(3) and 1986 claims.

9    Because amendment of these claims would not be futile, the Court grants Plaintiff

10  leave to amend. Courts liberally grant leave to amend, especially in cases prosecuted by

11  *pro se* litigants, when amendment would not be futile. *See Lopez v. Smith*, 203 F.3d 1122,

12  1131 (9th Cir. 2000) (noting that the "rule favoring liberality in amendments to pleadings

13  is particularly important for the *pro se* litigant"). Plaintiff may amend only his §§ 1985(3)

14  and 1986 claims. As Plaintiff is proceeding IFP, the Court will screen his third amended

15  complaint before it orders service through the U.S. marshals.

## IV. CONCLUSION AND ORDER

17    For the reasons set forth above, the Court grants the United States' motion to dismiss,

18  Dkt. 209, and dismisses with prejudice Plaintiff's negligence, assault, battery, false

19  imprisonment, and intentional infliction of emotional distress claims against the United

20  States. After screening Plaintiff's complaint pursuant to 28 U.S.C. § 1915, the Court also

21  dismisses with prejudice Plaintiff's *Bivens* claim against Defendant Guerrero and § 1983

22  claim against Defendant Beal. Plaintiff's §§ 1985(3) and 1986 claims are dismissed with

23  leave to amend.

24    Plaintiff may file a third amended complaint within thirty days of the date of this

25  order amending only his §§ 1985(3) and 1986 claims against Defendant Guerrero. Failure

26  to timely file a third amended complaint will result in dismissal of the action for failure to

27  prosecute.

28

1   **IT IS SO ORDERED**.

2   Dated:  September 14, 2023   _____

3   Hon. Jinsook Ohta
    United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13

3:14-cv-02404-JO-KSC